UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAHMOUD MAHRAN,

                                    Plaintiff,

v.

DANIEL E. STROZYK, et al.,

                                    Defendants.
_____

**REPORT AND RECOMMENDATION**

10-CV-00127(A)(M)

        Plaintiff Mahmoud Mahran seeks relief in this action pursuant to 42 U.S.C. §§1983 and state law in connection with his allegedly false arrest in June 2009. Complaint [1].[1] Before me is defendants' motion for summary judgment [50]. For the following reasons, I recommend that the motion be granted in part and denied in part.

**BACKGROUND**

        On February 19, 2009, defendant Michael Ballow, a New York State Trooper, responded to a complaint call from a woman named Anna Cieri, who informed him that someone had opened a credit card account in her name and used it to make numerous purchases. Defendants' Statement of Undisputed Facts [52-1], ¶¶7-9. Cieri provided him with a report of activity on the credit card, which falsely indicated that she resided at 1256 Brighton Road, Tonawanda, New York. Id., ¶¶10-11; Strozyk Declaration [50-5], Ex. A, pp.00013, 0092-95. Internet records indicated that Jennifer Arnold resided at 1256 Brighton Road. Strozyk Declaration [50-5], Ex. A, p.00101.

---

      [1]      Bracketed references are to the CM/ECF docket entries.

Following his initial investigation, Ballow referred the investigation to defendant Daniel Strozyk, a New York State Police Investigator, who took a sworn statement from Cieri on March 5, 2009. Id., p.00006. Strozyk ran a computer search which revealed that there was an Elizabeth Arnold residing in Amherst (id., ¶15), and obtained video and photographic surveillance from some of the stores where the credit card had been used. Id., ¶14(d). Strozyk alleges that surveillance footage from several stores contained images of the same woman using the credit card (id., ¶16), and that photographs taken on February 14, 2009 at Kohl's in Amherst, New York show the woman using the plaintiff's credit card, and the man behind her subsequently using a gift card purchased with the illegally obtained credit card. Id., ¶¶17-18, Ex. B.[2]

Believing that plaintiff was a potential victim, on June 9, 2009 Strozyk asked Ballow to contact plaintiff and have him come to the State Police station in Clarence, New York for an interview. Id. ¶19. Plaintiff arrived at the barracks at approximately 5:00 p.m. that day. Defendants' Statement of Undisputed Facts [52-1], ¶29. He was taken to a room and questioned with the door shut. Id., ¶¶30-32. Plaintiff alleges that he was immediately subjected to a "rather vigorous interrogation", and was never treated as a possible victim. Plaintiff's Declaration [58-1], ¶6.

During the interview, plaintiff identified Elizabeth Arnold as his girlfriend. Defendants' Statement of Undisputed Facts [52-1], ¶43. Plaintiff also identified himself as the man depicted in the February 14, 2009 surveillance photograph from Kohl's. Id., ¶38; Plaintiff's

---

[2] Plaintiff disputes "that there is a Kohl's video" and that the surveillance photograph from Kohl's depicts "the referenced woman using an illegally obtained credit card". Plaintiff's Statement in Response [56], ¶20. He claims he gave Elizabeth Arnold permission to use his card at Kohl's on February 14, 2009. Id., ¶21.

Statement in Response [56], ¶38. However, plaintiff denies using any gift cards at Kohl's. Plaintiff's Declaration [58-1], ¶12, and denies telling Strozyk that he had ever used gift cards which had been purchased with a stolen credit card. Plaintiff's deposition [58-5], p. 58. The parties also dispute whether plaintiff was also shown a surveillance video depicting a man using the illegally obtained card at Barnes and Noble in Hamburg, New York on January 3, 2009, and whether plaintiff identified himself as the individual in that video. Defendants' Statement of Undisputed Facts [52-1], ¶¶40-41; Plaintiff's Statement in Response [56], ¶¶40-41.

Plaintiff claims that Strozyk threatened him with deportation, at which point he requested a lawyer. Plaintiff's Declaration [58-1], ¶14. Although Strozyk states that all questioning ceased once plaintiff requested a lawyer (Strozyk Declaration [50-5], ¶28), plaintiff states that the interrogation continued throughout the evening, and that he was handcuffed to a chair. Plaintiff's Declaration [58-1], ¶¶15, 17.[3] Plaintiff was told that he was under arrest for possession of stolen property and other unnamed charges. Defendants' Statement of Undisputed Facts [52-1], ¶53.[4] All of these events occurred between 15 and 30 minutes of plaintiff's arrival at the police station. Id., ¶54.

Upon learning from plaintiff that his girlfriend shared the same last name as the individual who resided at the address used for the illegally obtained credit card, Strozyk had Elizabeth Arnold come to the barracks for an interview that same day. Id., ¶¶55-56, 58. After

---

[3] Strozyk could not recall whether plaintiff was handcuffed to a table or chair. Strozyk deposition transcript [58-1], p. 48.

[4] Although Strozyk could not recall whether he placed plaintiff under arrest (Strozyk deposition transcript [58-1], pp. 46, 49), he is identified in plaintiff's arrest report as the arresting officer. Strozyk Declaration [50-5], Ex. A, #0007. Defendant Kupka also testified that Strozyk decided to arrest plaintiff. Kupka deposition transcript [58-3], p. 10. The arrest report indicates that plaintiff was arrested at 12:51 a.m. Id.; Strozyk deposition transcript [58-1], p. 50.

she admitted her involvement with the illegally obtained credit card, she was Mirandized and later signed a consent to search her residence, which resulted in the discovery of gift cards purchased with the illegally obtained credit card and receipts. Strozyk Declaration [50-5], ¶¶36-38.[5] Strozyk did not recall whether plaintiff arrested prior to Arnold's interview, but testified that her statements were among the facts used to support the charges against him. Strozyk deposition transcript [58-1], pp. 43-44, 46.

Strozyk testified that plaintiff was at the barracks "less than a half hour" before being placed under arrest. Strozyk deposition [58-1], pp. 46-47. Plaintiff alleges that after he was placed under arrest, his request to perform his daily prayers was denied, and that when he requested water, Strozyk gave him a cup containing only one millimeter of water. Id., ¶¶62-65.

In the early morning hours on June 10, 2009 plaintiff was formally charged in two felony complaints with Criminal Possession of Stolen Property in the fourth degree, in violation of NY Penal Law §165.45[2], and with Forgery in the second degree, in violation of NY Penal Law §170.10[1], both charges arising from the use of the illegally obtained credit card at Barnes & Noble on January 3, 2009. Strozyk Declaration [50-5], Ex. A, ##00014-00015. He was issued an appearance ticket and released at approximately 3:30 a.m. Defendants' Statement of Undisputed Facts [52-1], ¶¶72-74. The charges were eventually dismissed as a result of an Adjournment in Contemplation of Dismissal. Id., ¶77.

---

[5] Strozyk's notes of his interview with Arnold reflect that she and plaintiff applied for the credit card in Cieri's name and that plaintiff used the credit card at Barnes and Nobles. Strozyk Declaration [50-5], Ex. A, ##00076, 00080.

Although plaintiff is now represented by counsel,[6] his *pro se* Complaint [1], which has not been amended, alleges "false arrest, intentional infliction of emotional distress, libel, slander, violation of plaintiff's right to due process under U.S. and NYS constitution, [and] violation of plaintiff's civil rights in violation of 42 U.S.C. sections 1981 and 1983". Id., ¶13. However, plaintiff subsequently discontinued his claims for libel, slander, violation of 42 U.S.C. §1981, and all claims against New York State (sued as the New York State Police). Stipulation of Partial Discontinuance [59].

**ANALYSIS**

**A.     Summary Judgment Standard**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

While the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some

---

[6]     Attorney Stephen Szymoniak entered an appearance on plaintiff's behalf on October 21, 2011 [41].

metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is *a genuine issue for trial*." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . . The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

**B.     False Arrest**

"Claims for false arrest . . . brought under §1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). "Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012).

In moving for summary judgment, defendants argue that "a confinement is privileged if probable cause existed at the time of the arrest." Defendants' Memorandum of Law [50-1], p.5. "The existence of probable cause to arrest constitutes justification and is a complete

defense to an action for false arrest, whether that action is brought under New York law or under §1983." Kilburn v. Village of Saranac Lake, 413 Fed.Appx. 362, 363 (2d Cir. 2011) (Summary Order). "Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested . . . .When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis in original). In determining the existence of probable cause, "[c]ourts should look to the totality of the circumstances". Id.

Defendants argue that "[p]robable cause existed at the time of the plaintiff's arrest, because he identified himself to Inv[estigator] Strozyk in photographs from Kohl's . . . . The plaintiff's *own identification of himself using the illegally obtained card*, along with the deposition of Anna Cieri stating that the card was obtained without her permission, was enough probable cause to warrant the plaintiff's arrest. This, combined with the connection between the plaintiff's girlfriend, Elizabeth Arnold, and the address which was used for the illegally obtained credit card, that of Jennifer Arnold, would certainly warrant a prudent person to believe that Mr. Mahran had committed an offense." Defendants' Memorandum of Law [50-1], pp. 6-7 (emphasis added).

However, in deciding this motion, I must "examine the evidence in the light most favorable to, and draw all inferences in favor of", the plaintiff. Ford, 316 F.3d at 354. Although plaintiff admits that he identified himself to Strozyk as the individual depicted in the surveillance photo at Kohl's, he denies that he had, or used, any gift cards at Kohl's (plaintiff's Declaration

[58-1], ¶12), he denies identifying himself as the person in the photo at Barnes & Noble (id., ¶22), and he denies telling Strozyk that he had ever used a gift card that he knew had been purchased with a stolen credit card (plaintiff's deposition [58-5], p. 58).

While Strozyk contends that the Kohl's photo ([50-5], Ex. B; [58-3], Ex. J) shows "a man who is standing behind the woman, [who] subsequently used a gift card purchased with the illegally obtained credit card" (Strozyk Declaration [50-5], ¶18), and that plaintiff "was subsequently pictured using a gift card that was purchased with the illegally obtained credit card" (id., ¶25), he fails to explain how the grainy and blurred photo shows *any* credit card, much less an illegally-obtained credit card. Although the photo bears the typewritten notation "Guy who used the Gift Cards", along with handwritten notations, plaintiff states that these notations were not on the photo when Strozyk showed it to him (plaintiff's Declaration [58-1], ¶13). Defendants do not explain how the notations came to be placed on the photo, or how they show that the person depicted in the photo is the "Guy who used the Gift Cards". Moreover, the fact that plaintiff was subsequently charged only with use of a credit card at Barnes & Noble, rather than Kohl's, creates at least a reasonable inference that probable cause was lacking as to events transpiring at Kohl's.

Since I "cannot determine whether probable cause existed as a matter of law because genuine issues of material fact exist as to the relevant events" (Anderson v. City of New York, 817 F.Supp.2d 77, 88 (E.D.N.Y. 2011)), I recommend that defendant's motion to dismiss

-8-

plaintiff's false arrest claim be denied to the extent that is based on the existence of probable cause.[7]

Defendants also argue that plaintiff "cannot satisfy the first element of a false arrest with regard to defendant Ballow, because he did not intend to confine him. Instead, he requested [plaintiff's] presence at the State Police Station . . . because they believed he might be a victim, not a suspect." Defendants' Memorandum of Law [50-1], p.5. However, plaintiff alleges that "Strozyk . . . instructed Trooper Ballow to place me under arrest. Trooper Ballow arrested me and handcuffed me to a chair". Plaintiff's Declaration [58-1], ¶15. Therefore, the motion should likewise be denied as to defendant Ballow.

**C.     Due Process**

In moving to dismiss plaintiff's due process claim, defendants argue that although "[t]he complaint fails . . . to explain how he was unreasonably prevented from engaging in his prayers." Defendants' Memorandum of Law [50-1], p. 15. This attack is more properly analyzed under Fed. R. Civ. P. ("Rule") 12(b)(6) than under Rule 56. *See* Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 273 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment"); Fulmore v. Raimo, 2012 WL 4033731, *3 (N.D.N.Y. 2012) ("It is well accepted that, on a defendant's motion for summary judgment, the plaintiff's claim may be dismissed for failure to state a claim").

---

[7] Defendants also move for summary judgment based on qualified immunity, requiring them to "show that it was objectively reasonable to believe that probable cause existed or that 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Defendants' Memorandum of Law [50-1], p. 8 (*citing* Finigan v. Marshall, 570 F.3d 57, 61 (2d Cir.2009)). I conclude that summary judgment as to this defense should be denied for the same reasons that summary judgment is denied as to the probable cause defense.

Defendants rely upon Jones v. Goord, 190 F.R.D. 103 (S.D.N.Y. 1999), in which the court dismissed the second amended complaint (with leave to replead), concluding that the plaintiffs failed "to explain how plaintiffs were unreasonably prevented from engaging in their prayer rituals by the mere fact that they were confined in double cells". 190 F.R.D. at 110-11.

While it might not be clear how an inmate's confinement to a double cell interferes with the ability to pray, here plaintiff directly alleges that "investigator Stryzyk [*sic*] knowingly and intentionally deprived plaintiff from performing his daily prayers, plaintiff has asked investigator multiple times to perform his daily prayer but investigator refused to allow him". (Complaint [1], ¶9).[8] I conclude that these allegations are sufficiently detailed to withstand dismissal under Rule 12(b)(6).[9] Therefore, I recommend that this portion of defendants' motion be denied.

**D.      Intentional Infliction of Emotional Distress**

A claim for intentional infliction of emotional distress "is a highly disfavored tort under New York law, and such claims generally do not survive dispositive motions". Allam v. Meyers, 2011 WL 721648, *6 (S.D.N.Y. 2011). In order to prevail on that claim, plaintiff must prove "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. New York Post Co., 81 N.Y.2d 115,

---

[8]     Plaintiff testified that being handcuffed to a chair made it impossible for him to stand and kneel, as he is required to do when praying. [58-5], pp. 60-61.

[9]     They are at least as detailed as the allegations in the Appendix Forms, which, according to Rule 84, "suffice under these Rules".

121 (1993). This conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and utterly intolerable in a civilized society." Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303 (1983). "In practice, courts have tended to focus on the outrageousness element, the one most susceptible to determination as a matter of law." Howell, 81 N.Y.2d at 121.[10]

The Complaint alleges that Strozyk "threatened . . . to contact immigration and naturalization service for the purpose of plaintiff's deportation in case plaintiff insisting [*sic*] upon his rights to an attorney", deprived him of water "to force him into a false confession", and prevented him from performing his daily prayers. Complaint [1], ¶¶6, 8, 9.[11] While such conduct (if it occurred) may certainly not be condoned, it does not rise to the level of outrage necessary to support a claim for intentional infliction of emotional distress. "Mere threats, annoyance or other petty oppressions, no matter how upsetting, are insufficient." Owen v. Leventritt, 174 A.D.2d 471, 472 (1st Dep't 1991); Makowski v. United Brotherhood of Carpenters and Joiners of America, 2010 WL 3026510, *15 (S.D.N.Y. 2010).

Therefore, I recommend that this claim be dismissed.

---

[10] Defendants also argue that this claim against Ballow and Kupka should be dismissed "because the plaintiff does not name them in his complaint". Defendants' Memorandum of Law [50-1], p. 9. Plaintiff does not contest this argument.

[11] Although plaintiff also argues that he was told that he would be "somebody's jailhouse bitch" (plaintiff's Memorandum of Law [57], p. 10), this was not alleged in the Complaint, and therefore will not be considered.

E.  **Unpled Claims**

1.  **Malicious Prosecution**

Defendants also seek dismissal of plaintiff's claims for malicious prosecution (defendants' Memorandum of Law [50-1], Point VIII). However, plaintiff's Complaint alleges false arrest, not malicious prosecution, and "the elements of false arrest and malicious prosecution differ from each other". Brown v. City of New York, 92 A.D.2d 15, 16 (1st Dep't), aff'd, 60 N.Y.2d 893 (1983). Since there is no need to address a claim which has not been alleged, I recommend that this aspect of plaintiff's motion be denied as moot.

2.  **Equal Protection**

In opposition to defendants' motion for summary judgment plaintiff argues that "it is alleged defendants deprived [him] of "equal protection from disparate treatment on account of race, religion and national origin." Plaintiff's Memorandum of Law [57], p. 9. However, the Complaint does not allege an equal protection claim, and "[i]t is black letter law that a party may not raise new claims for the first time in opposition to summary judgment". Brandon v. City of New York, 705 F.Supp.2d 261, 278 (S.D.N.Y. 2010). Therefore, I will not consider this argument. See Lyman v. CSX Transportation, Inc., 364 Fed.Appx. 699, 702 (2d Cir. 2010) (Summary Order) ("we cannot conclude that the district court abused its discretion in failing to consider plaintiff's new theories of liability"); Fullwood v. Association for the Help of Retarded Children, Inc., 2010 WL 3910429, *7 (S.D.N.Y. 2010).

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment [50] be granted to the extent of dismissing plaintiff's claim for intentional infliction of emotional distress, but that it otherwise be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by April 25, 2013 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: April 8, 2013

                                                      <u>/s/ Jeremiah J. McCarthy</u>
                                                      JEREMIAH J. MCCARTHY
                                                      United States Magistrate Judge